US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 1 4 2011

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| SHIRLEY J. WHITE, On Behalf of Herself And All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 11-2243 |
| v. | ) ) ) ) | **CLASS ACTION COMPLAINT** |
| | ) | Jury Trial Demanded |
| VOLKSWAGEN GROUP OF AMERICA, INC. | ) ) | |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

1.      Plaintiff Shirley J. White ("Plaintiff") brings this action on behalf of herself and all other similarly situated owners and lessees of model year 2003-2007 Volkswagen New Beetle automobiles equipped with a Tiptronic automatic transmission ("the subject vehicles") to seek monetary, declaratory, and equitable relief for her claims arising out of a defect in the design and/or manufacture of the automatic transmission of the subject vehicles. The defect causes the transmission to malfunction and require replacement, thereby forcing vehicle owners to sustain monetary damages, and leaving them with a malfunctioning vehicle. Defendant Volkswagen Group of America ("Volkswagen" or "Defendant") has been aware of the defect, but at first chose to ignore it and shirked all responsibility. When the clamor of affected vehicle owners grew, Volkswagen eventually agreed to extend the warranty but only for the valve body of the transmission for the subject vehicles. This warranty extension, however, is of little use because

1

it does not cover any damage to the vehicle's transmission which, as a direct result of the defective transmission valve body, fails and needs replacement at a cost of several thousands of dollars. In effect, Volkswagen's offer to extend the warranty but to limit that extended coverage only to the transmission's valve body while washing its hands of any liability for the resultant damage to the transmission itself, is tantamount to relying on the proverbial "finger in the dike" approach to dealing (or refusing to deal) with the defects prevalent in VW's transmission.

## JURISDICTION AND VENUE

2.     This action is brought on behalf of a class of owners and lessees in the United States (or of an Arkansas subclass of such owners and lessees) of model year 2003-2007 Volkswagen New Beetle automobiles equipped with the automatic Tiptronic transmission. This Court, therefore, has subject-matter jurisdiction over the claims alleged in this Class Action Complaint pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there are more than one-hundred class members, there are members of the Plaintiff class who are citizens of states different from that of Volkswagen, and the aggregate of class members' claims is more than $5 million.

3.     This Court has personal jurisdiction over Defendant Volkswagen Group of America, Inc. because Defendant distributes, markets, and through its authorized dealers, offers for sale Volkswagen automobiles within this State and judicial district.

4.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this judicial district. Plaintiff resides within this judicial district, purchased her vehicle within this judicial district, had her vehicle's transmission malfunction within this judicial district, and sustained damages in this judicial district by expending money to have the transmission repaired at a Volkswagen-authorized dealership located within this judicial district.

2

## PARTIES

5.      Plaintiff Shirley J. White is a resident of Ft. Smith, Arkansas.  She is the owner of a 2003 Volkswagen New Beetle automobile equipped with an automatic Tiptronic transmission.  Due to a defect in the design and/or manufacture of the vehicle's transmission, Plaintiff's vehicle's transmission failed, causing her vehicle to malfunction.  When her vehicle had merely 80,000 miles or so, her vehicle began to experience hard shifting during normal driving.  Ms. White took her car to Bill White Volkswagen, a factory-authorized Volkswagen dealer in Arkansas, but was informed that there was nothing wrong with her car.  Approximately two weeks later, when the problem persisted, Ms. White returned to the dealer.  This time, the dealer informed her that she needed to have her transmission replaced---an unexpected repair for a vehicle having only 80,000 miles.  Having no choice, given the difficulty her vehicle was having in shifting during normal driving, Ms. White agreed to have the transmission replaced.  The transmission replacement was completed at Bill White Volkswagen on or about July 23, 2010, at a cost of several thousand dollars, which Ms. White paid.

6.      Defendant Volkswagen Group of America, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business at 2200 Ferdinand Porsche Drive in Herndon, Virginia.  Volkswagen Group of America (formerly known as Volkswagen of America) is the U.S. sales arm of Volkswagen AG, Europe's largest automaker.  The company sells Volkswagen and Audi cars through about 600 Volkswagen dealerships and 260 Audi dealerships in the United States.  Defendant Volkswagen Group of America (then known as Volkswagen of America) was the entity responsible for injecting the 2003-2007 model year Volkswagen New Beetles into the stream of commerce within the United States.

3

## THE DEFECTIVE TRANSMISSION

7.      The Volkswagen New Beetle is a popular vehicle sold throughout the United States.  Many of these vehicles during the 2003-2007 model years were equipped with a Tiptronic automatic transmission.  This transmission is a sealed unit, meaning that it typically is not amenable to being rebuilt or to have its components repaired, as it is installed as one sealed or encased transmission unit.

8.      Shortly after the vehicles were sold in the United States, it became evident to Volkswagen that a problem was plaguing the vehicles' automatic transmissions, as owners and lessees began taking their vehicles back to Volkswagen dealers, complaining of hard shifts during normal driving.  These malfunctions were due to a defect that was present in the subject vehicles as of their date of manufacture.  The nature of the defect, however, was such that the actual malfunction of the transmission often exhibited itself shortly after the expiration of Volkswagen's new factory warranty.

9.      The prevalence of transmission complaints pertaining to the subject vehicles is evidenced by even a cursory review of the Internet, where various online postings in automobile-related websites document complaints by vehicle owners.  For example, in Edmunds.com, a popular automotive website, a forum entitled "Volkswagen Beetle Transmission Problems" was launched and contains complaint after complaint by owners of the subject vehicles who face a transmission needing replacement or repair.   One posting entitled "2006 VW Beetle Transmission Failure" from an owner identified by username "vwdoesntcare" details that:

> Our 2006 New Beetle VW Convertible was diagnosed with a "transmission failure" and were told that we needed a new one for $5K with 79K miles. Offered 25% assistance from VW Advocate...VW will not accept responsibility for consistent faulty transmissions and state that since it is out of warranty, they really can't help much. The dealer stated that transmissions should last longer than 79K

4

miles, however, since "Google-ing" this topic I am amazed at how many owners have had the same problem.

Another posting entitled, "Re: 2005 Beetle Convertible [orangebug] by an owner identified with the username "punchbadbuggy" likewise details that:

> I have a 2004 and they told me the warranty expired in march of this year even if the car has only 65.000 miles on it. Nothing is being done for anyone else. I had my transmission and valve body fixed by AAMCO at a cost of $6000.

So too, a posting entitled, " 2003 VW Beetle Conv w/failed transmission" by an owner identified by the username "rainbowmuggle" describes that, "Like so many here, I need a new transmission. It has 77,000 miles on it." Yet another posting, entitled "Re: 2005 Beetle Convertible" submitted by an owner identified by the username "03vwnewbeetle" similarly complains that "I have a 2003 VW New Beetle Convertible and I am experiencing transmission problems. I contacted the National Hwy and Safety to lodge a complaint. . . . I only have 67k on my 2003 and an inch thick of service work that has been done on it. I am fed up." These are but a handful of the hundreds of similar online complaints about the faulty transmission in the subject vehicles. All of these postings are found in Exhibit 1 hereto.

10. In response to this readily apparent defect, Volkswagen initially turned a deaf ear, and refused to accept *any* responsibility. Because the nature of the defect meant that transmission failure would almost invariably occur shortly after the durational limits of Volkswagen's new car warranty expired, Volkswagen simply informed aggrieved customers that Volkswagen refused to cover any of the required repairs or transmission replacements. Like Ms. White, therefore, owners were left with bills of $5,000 or more to replace a transmission in vehicles that were just a few years old and had 80,000 or fewer miles. This, despite the fact, that the transmission failures were caused by a design or manufacturing defect that Volkswagen was

aware of, but concealed and failed to disclose to prospective owners and lessees when they purchased or leased their VW New Beetle automobiles.

## VOLKSWAGEN'S NEW VEHICLE WARRANTY, AND VOLSWAGEN'S BREACH AND UNCONSCIONABLE INTERPRETRATION OF THE SAME

11.     Like all 2003-2007 Volkswagen New Beetles, Ms. White's vehicle was covered by a written New Vehicle Warranty issued by Volkswagen.  The warranty, which generally runs for a period of the earliest of 4 years or 50,000 miles, warrants that the vehicle will be free from defects in materials or workmanship.  In addition, a separate Limited Powertrain Warranty, running for a period of the earliest of 5 years or 60,000 miles, also separately warrants against defects in the vehicle's powertrain, which includes the transmission.  By their terms, both the New Vehicle Warranty and the Limited Powertrain Warranty are fully transferable from the vehicle's original owner to any subsequent owner.

12.     At the time that Ms. White's vehicle was first sold, its transmission already contained a defect in manufacture, although the same was undisclosed to Ms. White and unknown to her.

13.     When Ms. White demanded that her vehicle's transmission be repaired, Volkswagen responded by denying warranty coverage, asserting instead that by the time Ms. White sought the repairs (i.e. by the time she first could have discovered this latent defect), the vehicle exceeded the durational limits unilaterally imposed by Volkswagen on the applicable written warranties.

14.     As detailed herein, Plaintiff's and the class members' vehicles were defective within the warranty coverage period because a defect within the transmission was present from the date of the vehicles' manufacture, and the injury to the transmission was occurring and was ongoing within the warranty period.

6

15.     Defendant has breached the terms of this express warranty by failing to correct, at no charge to class members, the subject defect.   Rather, within the warranty coverage period, Defendant routinely denies that any such defect exists, or contends that its "discovery" has taken place outside the period of warranty coverage, and has therefore refused to repair the class members' vehicles, as required under the terms of Defendant's express warranties.

16.     To the extent that Volkswagen has claimed and continues to claim that it is justified in refusing to remedy and/or repair the subject defect in certain vehicles because the defect has been "discovered" only after the durational period of warranty coverage has elapsed, that practice amounts to an unconscionable business practice, rendering Volkswagen's justification unenforceable, and as a result, Defendant is and should be ordered to remedy the defect under warranty.

17.     Adhering to the durational period of the warranty is unconscionable because, *inter alia*, Defendant knew when it sold the subject vehicles (backed with the express warranties) that the defects alleged herein existed, but failed to disclose the same to the vehicle owners.  By the time Plaintiff's vehicle was sold, Volkswagen had received widespread complaints about the defect. The nature of the defects are such that they were known to Defendant but were not and could not have been known to, or discovered by, class members upon reasonable inspection of the vehicles prior to their purchase.  Defendant's superior knowledge about the quality of the vehicles, including its defects, as well as Defendant being the sole issuer of the express warranty covering the subject vehicles, gave Defendant a superior bargaining power with respect to class members in setting forth the terms of the warranty coverage.

18.     Moreover, Volkswagen's fixing of a 4 or 5 year warranty for the subject vehicles, when it knew of the existence and prevalence of the defect to the transmission was also

unconscionable in light of industry knowledge and expectation that an automatic transmission in modern vehicles will not and should not require replacement for a period of a decade or more and for hundreds of thousands of miles.  Volkswagen, however, knew (but did not disclose) when it so limited the terms of its express warranties that with the New Beetle Tiptronic transmission, the subject defect would cause countless of these vehicles to require transmission replacement well before the time or mileage reasonably expected by consumers and the industry under the custom within the automotive trade.  Only by concealing its knowledge and misrepresenting the actual reliability and quality attributes of the vehicles, was Volkswagen able to get Plaintiff and consumers at large to "agree" to a warranty coverage of 4 years or 50,000 miles (and to a Powertrain warranty of 5 years or 60,000 miles).

19.     As detailed more fully below, when Volkswagen eventually came around to acknowledging that a problem existed with the subject vehicles' transmissions, the approach Volkswagen unilaterally took of "extending" the warranty coverage but only for the transmission valve body, while leaving consumers like Plaintiff liable for paying the cost of repair to the actual transmission that was needed as a result of the subject defect, was itself unconscionable.

20.     As a result, because the unilaterally imposed durational limits on Volkswagen's original written warranties, as well as the scope limitations placed on Volkswagen's subsequent warranty extension, are unconscionable, they are unenforceable.  Volkswagen, therefore may not rely on these durational or scope limits to avoid covering the cost of replacing the damaged transmissions in the subject vehicles—a damage and needed repair that was caused, in the first instance, by the defect in the transmissions.

8

## VOLKSWAGEN'S CONCEALMENT OF THE DEFECT, BELATED EXTENSION OF A USELESS WARRANTY, AND REFUSAL TO LIVE UP TO THEIR OBLIGATIONS

21.     When the transmission in Ms. White's vehicles failed at a time when her vehicle had less than 80,000 miles, she was unaware that the reason for this unusual occurrence was a defect that plagued the Tiptronic transmission in Volkswagen New Beetle automobiles. Volkswagen did not inform her as much, concealing its knowledge about the existence and prevalence of this common defect.

22.     Instead, Volkswagen demanded that Ms. White pay to have the transmission in her vehicle replaced at a cost of $5,000, which Ms. White was forced to do.

23.     The transmission replacement to Ms. White's car was completed on or about July 23, 2010.

24.     Several months later—on or about November 2010—Volkswagen began mailing letters to owners and lessees of 2003-2007 Volkswagen New Beetle automobiles, informing them that, "Volkswagen has received customer complaints of affected vehicles that may experience a hard shift from first to second gear, and also from second to third gear." (Exhibit 2 hereto at 1). Volkswagen's letter went on to state that, as a result, Volkswagen would "extend the warranty that covers the valve body in your vehicle's transmission to 7 years or 100,000 miles, whichever occurs first." *Id.* Volkswagen's letter went on to highlight, however, that "[t]his warranty extension covers only the diagnosis and repair of the transmission valve body. . . . Any repairs that are (1) necessary for proper diagnosis of those other conditions or (2) required to bring the vehicle up to factory specifications are not covered by this warranty extension." *Id.* (bold and underlining in original).

25.     Upon receipt of this letter, Ms. White contacted Volkswagen to obtain warranty

9

coverage and reimbursement for the thousands of dollars she incurred for having to replace the transmission in her vehicle, as the troubles plaguing her transmission were precisely the ones detailed in Volkswagen's letter announcing the warranty extension.

26.     Volkswagen, however, refused to provide any warranty coverage to Ms. White. It maintained that its letter offering the warranty extension limited the extended warranty coverage to only the transmission valve body—a single discrete part in the sealed transmission unit.   Because the defect in this part required that the entire transmission be replaced, Volkswagen maintained that that was outside the scope of the extended warranty coverage.

27.     Of course, Volkswagen's position was specious, but it was one that Volkswagen has continued to adopt with respect to all aggrieved vehicle owners who seek to be covered under this extended warranty offering for having to replace their vehicle's transmissions as a direct result of the defective transmission valve body that is found in subject vehicles.   The fact is that a defective transmission valve body will cause the transmission to fail and require replacement.   Yet, despite this, Volkswagen offers no relief for aggrieved vehicle owners and lessees who need their vehicles' transmissions replaced or repaired because Volkswagen interprets its extended warranty coverage to only cover a replacement or repair of the transmission valve body.

28.     Thus, while effectively admitting that it included a defective transmission valve body in the 2003-2007 automatic New Beetles, and while the natural result of such a defective transmission valve body is to cause damage to the transmission unit such that it will require replacement, Volkswagen has and does disclaim any liability for the costs associated with replacing the transmissions in the subject Volkswagen New Beetles.

## VOLKSWAGEN'S PUBLIC CAMPAIGN TO MISREPRESENT THE QUALITY ATTRIBUTES OF THE VOLKSWAGEN NEW BEETLE AND TO DECEIVE THE PUBLIC

29.     Concern within the public about the quality and workmanship of the New Beetle was quick to surface because, unlike the original and renowned Volkswagen Beetle automobile that was built in Germany, the New Beetle to be sold to U.S. consumers would be and was assembled in Mexico.  Volkswagen's decision to assemble the Volkswagen New Beetle in Mexico, which did not have the reputation and longstanding history of reliable car assembly subject to quality controls that prevailed in German automotive plants, was motivated by a desire for cost savings.

30.     The public and press, quite understandably, expressed a suspicious attitude about the quality of the vehicle assembly and workmanship that would result if the New Beetle was assembled in Mexico.  Aware of these concerns, for several years, Volkswagen of America engaged in a deliberate campaign to assure the public falsely that there was no cause for concern about the quality of manufacturing and assembly of the Volkswagen New Beetle, even when Volkswagen of America knew that this was not true because it was receiving numerous complaints about defects in the components of the same vehicles, including their transmissions.

31.     In a July 26, 2003 news article entitled, "Defining the American Car," published by the news journal the Free Republic and reprinted throughout the Internet, a Volkswagen of America spokesperson admitted that Volkswagen of America was engaged in a campaign of "dealing with" the public concern over the quality of the New Beetle's assembly, given that they were not assembled in Germany or in another locale known for strict quality control, but in Mexico with critical parts arriving from the likes of Argentina.  As the news article reported:

> While the original Beetles for U.S. customers came from Germany, every one of the New Beetles for U.S. customers today is built in Mexico.  And the New Beetle's 5-speed manual transmission comes from Argentina.
>
> Volkswagen of America spokesman Tony Fouladpour said he has heard anecdotally of some New Beetle buyers being concerned about the car's assembly in Mexico.
>
> 'I think dealers are good at dealing with it, telling people we have been producing these vehicles in Mexico (for the Mexican market) since the 1960'' he said. 'And the quality there is comparable to what we have in our plants in Germany.'

Ex. 3 hereto at 2.

32.     In truth and in fact, what Volkswagen dealers in the United States were conveying to the public about the quality of assembly of the New Beetles in Mexico was untrue and unfounded.  By the time the Free Republic article was published in mid-2003, Volkswagen of America was aware that the New Beetles assembled in Mexico had experienced a significantly higher rate of reported complaints and problems about workmanship and defects in various components, including but not limited to their transmissions and engine coils, than from comparable vehicles assembled by or for Volkswagen in Germany.

33.     Had Ms. White been informed by Volkswagen about the accurate truth about the rate of complaints plaguing the Volkswagen New Beetle, and specifically the complaints regarding the Tiptronic transmission, she would not have purchased her vehicle.

## CLASS ACTION ALLEGATIONS

34.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action as a class action on behalf of herself and all other similarly situated owners and lessees of model year 2003-2007 Volkswagen New Beetle vehicles within the United States equipped with a Tiptronic automatic transmission.  For counts II-VI below, Plaintiff brings this action on behalf of a

12

subclass of Arkansas owners and lessees of the subject vehicles.    For any count in which Plaintiff seeks to certify a nationwide class (i.e., Counts I and VII), Plaintiff seeks in the alternative to certify the same count on behalf of a subclass of Arkansas owners and lessees of the subject vehicles, in the event that certification of a nationwide class were to be denied. Specifically excluded from the class and subclass definitions are all employees or officers of Defendant or its corporate affiliates, as well as all federal, state, and local government officers and employees, including any judicial officers assigned to this case and their staff.  Plaintiff reserves the right to amend this class and subclass definition, including but not limited to adding any necessary additional or different classes or subclasses, as case circumstances warrant.

35.    Although the exact number of class members is presently unknown, Plaintiff is informed and believes that hundreds of thousands of 2003-2007 Volkswagen New Beetle vehicles equipped with a Tiptronic automatic transmission have been sold throughout the United States.  As a result, the class comprises a sufficiently numerous amount of class members that makes joinder not feasible, and satisfies the numerosity requirement for class certification.

36.    Class certification is also appropriate because there is an identifiable class on whose behalf this class action is being prosecuted; namely, owners and lessees of 2003-2007 Volkswagen New Beetle vehicles within the United States that were originally equipped with a Tiptronic automatic transmission.

37.    There are questions of law and fact common to the class.  Among these, are the following:

a.  Whether Defendant is responsible for injecting into the U.S. stream of commerce allegedly defective automobiles;

b.  Whether the Tiptronic automatic transmission in the subject vehicles is defective;

    c.  Whether Defendant breached any duty imposed on it by law;

    d.  Whether Defendant's unilaterally imposed durational limits to its factory express warranty for the subject vehicles are unenforceable;

    e.  Whether Defendant fraudulently concealed from class members the allegedly latent defect in the subject vehicles' transmissions;

    f.  Whether the so-called extended warranty to the transmission valve body offered by Defendant adequately addresses the alleged defect;

    g.  Whether class members legally are entitled to any relief from Defendant and, if so, the nature and scope of such relief.

38.     Plaintiff's claims are typical of those of the class in that Plaintiff, like all putative class members, is an owner or lessee of the subject vehicles, and alleges that her vehicle was equipped with a defective automatic transmission. Plaintiff is a member of the class she seeks to represent, and the claims she asserts on her own behalf are the same as those asserted on behalf of the absent class members.

39.     Plaintiff is an adequate class representative in that, as a current owner of a 2003 Volkswagen New Beetle equipped with a Tiptronic automatic transmission, her interests are entirely aligned with those of the class. She seeks relief to remedy the alleged defects and the loss it has caused her to incur. Plaintiff has also retained competent counsel, experienced in class action litigation, to represent her in pursuing this class action.

40.     Class certification is also proper because Defendant has acted or refused to act on grounds generally applicable to the entire class. Specifically, Defendant has injected into the U.S. stream of commerce the allegedly defective 2003-2007 Volkswagen vehicles, and has refused to take any action to properly rectify the alleged defect. Defendant's mere offering of an

extended warranty that covers only the transmission valve body, while refusing to take any responsibility for the repair of the transmission damage caused by the alleged defect in the transmission valve body, is unconscionable and, absent a class action, would lead to potentially inconsistent and unclear rulings as to Defendants' obligations towards class members.

41.     A class action represents a superior form of litigation over individual lawsuits. The cost of litigating the issues underlying this complaint against a large corporate defendant like Volkswagen necessarily means that individual action is not feasible because the costs of such individual litigation would dwarf the potential recovery available in an individual lawsuit.  In addition, individual litigation would potentially result in inconsistent rulings with respect to Defendant's liability and duty owed to owners and lessees of the subject vehicles.

42.     A class action is manageable.  The proposed class represents an identifiable class whose claims can be objectively ascertained, and any relief granted can be overseen by the Court.

## COUNT I
## (BREACH OF EXPRESS WARRANTY—ON BEHALF OF A NATIONWIDE CLASS)

43.     Plaintiff hereby incorporates by reference all of the allegations of this Class Action Complaint with the same force and effect as if they had been restated herein.

44.     Plaintiff is an owner of a 2003 Volkswagen New Beetle that was equipped with a defective Tiptronic automatic transmission, as detailed herein.

45.     Like all such automobiles, when sold, Plaintiff's vehicle was subject to an express New Limited Warranty as well as a Powertrain Warranty issued by Defendant, whose terms purported to provide coverage for a period of the earlier of 4 years or 50,000 miles (in the case of the New Limited Warranty) and the earlier of 5 years or 60,000 miles (in the case of the

Powertrain Warranty) since the vehicle's in-service date to the vehicle's original and subsequent owners.

46.     Volkswagen has publicly interpreted and represented this warranty coverage to provide that, "[Volkswagen] warrants to the owner that the Contractual Product is free from defects in material and workmanship." (*Volkswagen of America, Inc. v. United States*, 540 F.3d 1324, 1327 (Fed. Cir. 2008)).

47.     As detailed herein, Plaintiff's and class members' vehicles were defective within the warranty coverage period because a defect within the Tiptronic transmission was present from the date of the vehicles' manufacture, and the injury to the transmission unit was occurring and was ongoing within the warranty period.

48.     Defendant has breached the terms of this express warranty by failing to correct, at no charge to class members, the subject defect.   Rather, within the warranty coverage period, Defendant routinely denies that any such defect exists, or contends that its "discovery" has taken place outside the period of warranty coverage, and has therefore refused to repair the class members' vehicles, as required under the terms of Defendant's express warranties.

49.     To the extent that Volkswagen has claimed and continues to claim that it is justified in refusing to remedy and/or repair the subject defect in certain vehicles because the defect has been "discovered" only after the durational period of warranty coverage has elapsed, that practice amounts to an unconscionable business practice, rendering Volkswagen's justification unenforceable, and as a result, Defendant is and should be ordered to remedy the defect under warranty.

50.     Adhering to the durational period of the warranty is unconscionable because, *inter alia*, Volkswagen knew when it sold the subject vehicles (backed with the express warranties)

that the defects alleged herein existed, but failed to disclose the same to the vehicle owner. By the time Plaintiff's vehicle was sold, Volkswagen had received widespread complaints about the defect. Not only did Volkswagen merely fail to disclose this defect, which was known to Volkswagen, but it affirmatively misrepresented that the subject vehicles were free of quality concerns. The nature of the transmission defects are such that they were known to Defendant but were not and could not have been known to, or discovered by, class members upon reasonable inspection of the vehicles prior to their purchase. Defendant's superior knowledge about the quality of the vehicles, including their defects, as well as Defendant being the sole issuer of the express warranty covering the subject vehicles, gave Defendant a superior bargaining power with respect to class members in setting forth the terms of the warranty coverage.

51.     Only by concealing its knowledge and misrepresenting the actual reliability and quality attributes of the vehicles, was Volkswagen able to get Plaintiff and consumers at large to "agree" to a new car warranty coverage of 4 years or 50,000 miles and to a powertrain warranty coverage of 5 years or 60,000 miles.

52.     Volkswagen's subsequent attempts to belatedly deal with the growing complaints about defective transmissions in the Volkswagen New Beetles by unilaterally extending the coverage of its warranty for a period extending to the earlier of 7 years or 100,000 miles was also an unconscionable remedy because the terms of that unilaterally-imposed warranty extension made clear that this warranty extension applied only to the transmission valve body, while leaving the vehicle owner fully responsible for any damage to the transmission as a whole that resulted from the original defect. As a result, Plaintiff and class members have been left to pay

thousands of dollars for a transmission replacement that would not have been necessary but for the defect plaguing Defendant's transmissions.

53.     Thus, the warranty limits are unconscionable or, alternatively, they raise a question of fact as to their unconscionability.

54.     As a proximate, foreseeable, and direct result of Defendant's breach of its express warranties, Plaintiff and the class members have suffered legal and actual injury, including the expenditure of money damages to have their vehicles repaired and associated expenses, damages associated with the loss of use and enjoyment of the vehicle, and damages associated with the decreased value of the vehicle.

**COUNT II**
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY—ON BEHALF OF A SUBCLASS OF ARKANSAS OWNERS AND LESSEES)**

55.     Plaintiff hereby incorporates by reference each and every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

56.     Defendant is a merchant with respect to the distribution, sale, and leasing of Volkswagen automobiles in the United States.

57.     By operation of law, an implied warranty of merchantability from Defendant attached to each sale and lease of the subject vehicles warranting that the vehicles were of merchantable quality.

58.     Because, when sold, the subject vehicles contained a defect in their Tiptronic transmission, causing the transmissions to malfunction and need replacement prematurely (or otherwise rendering the vehicles non-driveable), they are of unmerchantable quality, and Defendant has breached its implied warranty of merchantability.

59.     The subject vehicles are not merchantable because, *inter alia*: they would not pass

18

without objection in the trade under the contract description; they are not of fair average quality within the description; they are not fit for the ordinary uses for which such vehicles are used; and, they are not adequately labeled.   Within the modern automotive trade, an automatic transmission is not reasonably expected to require replacement, much less when the vehicle is only a few years old and has logged less than 100,000 miles.

60.   As a proximate and foreseeable result of this breach, Plaintiff and the members of the subclasses have been injured by being forced to operate unmerchantable vehicles that did not correspond to the benefits of the subclass members' bargains.

### COUNT III
### (ON BEHALF OF A SUBCLASS OF ARKANSAS OWNERS AND LESSEES)
### (STRICT LIABILITY—DESIGN DEFECT)

61.   Plaintiff hereby incorporates by reference each and every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

62.   The model year 2003-2007 Volkswagen New Beetle automobiles equipped with the automatic Tiptronic transmission are defectively designed in that they contain a design defect or flaw that causes their transmissions to fail and require replacement prematurely.  The design defect renders the vehicles unfit and inherently dangerous for their ordinary use.  The design defect at issue is a latent one that would not be apparent to a reasonable consumer upon reasonable inspection.

63.   As a proximate and foreseeable result of this defective design, Plaintiff and the members of the class have been injured by: being forced to operate an inherently dangerous and defective vehicle; being required to expend significant money in repair and replacement costs to remedy the problems caused by this defective design, as well as to incur significant expenses associated with these needed repairs, like towing, rental car costs, loss of use of the vehicle; and,

19

being forced to incur a loss in the value or economic worth of the vehicles caused by the defective design of the vehicles' transmission.

64.     Defendant Volkswagen Group of America, as the distributor of the vehicles is within the vertical chain of distribution of this defectively designed vehicle and, as such, is strictly liable for this design defect.

65.     Plaintiff and the class members are entitled to and do seek money damages as compensation for the losses and damage they have sustained as a direct, proximate, and foreseeable result of this design defect.

## COUNT IV
### (ON BEHALF OF A SUBCLASS OF ARKANSAS OWNERS AND LESSEES)
### (STRICT LIABILITY – DEFECTIVE MANUFACTURE)

66.     Plaintiff hereby incorporates by reference each and every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

67.     The model year 2003-2007 Volkswagen New Beetle automobiles equipped with the Tiptronic automatic transmission are defectively manufactured in that they contain a manufacturing defect or flaw that causes the vehicles' transmission to fail and require replacement prematurely, or otherwise costly repair. The manufacturing defect renders the vehicles unfit and inherently dangerous for their ordinary use. The manufacturing defect at issue is a latent one that would not be apparent to a reasonable consumer upon reasonable inspection.

68.     As a proximate and foreseeable result of this manufacturing defect, Plaintiff and the members of the class have been injured by: being forced to operate an inherently dangerous and defective vehicle; being required to expend significant money in repair and replacement costs to remedy the problems caused by this manufacturing defect, as well as to incur significant expenses associated with these needed repairs, like towing, rental car costs, and loss of use of the

vehicle; and, being forced to incur a loss in the value or economic worth of the vehicles caused by the defective manufacture of the transmission found within the vehicles.

69.     Defendant Volkswagen Group of America, as the distributor of the subject vehicles, is within the vertical chain of distribution of defectively manufactured vehicles, as such, is strictly liable for this manufacturing defect.

70.     Plaintiff and the class members are entitled to and do seek money damages as compensation for the losses and damage they have sustained as a direct, proximate, and foreseeable result of this manufacturing defect.

**COUNT V**
**(ON BEHALF OF A SUBCLASS OF ARKANSAS OWNERS AND LESSEES)**
**(NEGLIGENCE)**

71.     Plaintiff hereby incorporates by reference each and every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

72.     Defendant Volkswagen Group of America owed Plaintiff and the class members a duty of reasonable care with respect to the design, manufacture, promotion, advertising, and offering for sale, of the 2003-2007 Volkswagen New Beetle vehicles that were powered by the Tiptronic automatic transmission.

73.     Defendant breached this duty of reasonable care by manufacturing, designing, and/or distributing a vehicle and/or a transmission within that vehicle that was defective. Likewise, Defendant is vicariously liable for the breaches committed by Volkswagen AG.

74.     As a proximate and foreseeable result of Defendant's negligence, Plaintiff and the members of the class have been injured by: being forced to operate a defective and inherently dangerous vehicle; being required to expend significant money in repair and replacement costs to remedy the problems caused by Defendant's negligence, as well by being forced to incur

21

significant expenses associated with these needed repairs, like towing, rental car costs, and loss of use of the vehicle; and, being forced to incur a loss in the value or economic worth of the vehicles caused by the negligent manufacture, design, and/or distribution of the vehicles and the transmission found within the vehicles.

75.     Plaintiff and the class members are entitled to and do seek money damages as compensation for the losses and damage they have sustained as a direct, proximate, and foreseeable result of Defendant's negligence.

## COUNT VI
### (VIOLATION OF ARK. DECEPTIVE TRADE PRACTICES ACT, A.C.A. § 4-88-107— ON BEHALF OF A SUBCLASS OF ARKANSAS OWNERS AND LESSEES)

76.     Plaintiff hereby incorporates by reference every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

77.     At all times relevant hereto, Plaintiff and each Class member were "persons," as that term is defined in A.C.A., § 4-88-102(5).

78.     At all times relevant hereto, Volkswagen's vehicles, including the subject vehicles as well as the Tiptronic transmissions found within them, constituted "goods," as that term is defined in A.C.A., § 4-88-102(4).

79.     Defendant Volkswagen, through the conduct alleged herein, has engaged in unfair and/or deceptive acts and/or practices, within the meaning of A.C.A., §§ 4-88-107 and 4-88-108.  Volkswagen's conduct constituted unfair and/or deceptive acts or practices in violation of the A.C.A. because its conduct amounted to violation of at least the following statutory provisions of the Arkansas Deceptive Trade Practices Act:

      a.      in violation of A.C.A., § 4-88-107(a)(1), Volkswagen has made false

representations as to the characteristics and benefits of the subject
vehicles;

b.      in violation of A.C.A., § 4-88-107(a)(3), Volkswagen has advertised the
subject vehicles, touting the warranties purportedly covering the subject
vehicles, all the while with the intent not to sell them as advertised.

c.      in violation of A.C.A. §§ 4-88-107(a)(10) and 4-88-107(b) Volkswagen
has engaged in representations and omissions in connection with the
advertising, marketing, and offering for sale of the subject vehicles, as
alleged in this Class Action Complaint, that are deceptive and
unconscionable at common law;

80.     Plaintiff and the members of the class she seeks to represent reasonably relied
upon the representations, omissions, and advertisements made by Volkswagen in connection
with the qualities, standards, characteristics, and/or attributes of the subject vehicles.

81.     Volkswagen's violations of the Arkansas Deceptive Trade Practices Act have
injured and damaged Plaintiff and the members of the Class she seeks to represent by leaving
them with vehicles that are defective, of diminished value, and causing Plaintiff and members of
the class she seeks to represent to have spent significant out-of-pocket monies in repairs and
associated expenses.

82.     As a direct and proximate result of Volkswagen's violations of law, Plaintiff and
the Class are entitled to: declaratory and injunctive relief, including a declaration that
Volkswagen's practices violate the Arkansas Deceptive Trade Practices Act; an injunction
prohibiting Volkswagen from collecting, directly or through its dealers, fees for repairs or
replacements to be made to class members' transmissions; mandating that Volkswagen cease any

advertising that depicts the subject vehicles in a manner that leads the consumer to believe that they are of superior quality, design, or reliability, as well as mandating that Volkswagen issue corrective disclaimers and/or advertisements to correct the deceptive nature of its previously disseminated advertisements about the subject vehicles.

83.     As a direct and proximate result of Volkswagen's violations of law, Plaintiff and the members of the putative class also are entitled to and seek an award of money damages to compensate each of them, including compensation for: the costs of repairs incurred by each class member as a result of the defective transmission and its non-conformance to Volkswagen's representations about, including associated costs of towing, loss of use, rental of replacement vehicles proximately caused by the defective performance of the vehicle; costs associated with the loss of use of the vehicle brought about as a direct result of the defective malfunctions or non-performance of the vehicle; the diminished value of the vehicles brought about by the defects alleged herein.

84.     Plaintiff is also entitled to and hereby seeks an order directing Defendant to pay Plaintiff's reasonable attorneys' fees and costs of suit, as awarded by the Court, pursuant to A.C.A., 4-88-113(f).

## COUNT VII

### (UNJUST ENRICHMENT—ON BEHALF OF A NATIONWIDE CLASS)

85.     Plaintiff hereby incorporates by reference every allegation of this Class Action Complaint with the same force and effect as if it had been fully restated herein.

86.     Plaintiff and the class members are each owners of Volkswagen automobiles whose transmission are or were defective in the manner detailed herein.

87.     By purchasing a Volkswagen-branded automobile, Plaintiff and the class

members conveyed monetary as well as intangible benefits on Defendant, and Defendant appreciated and was enriched by those benefits. Plaintiff, for example, was forced to and did purchase replacement Volkswagen transmission parts that were necessary as a result of the defect plaguing Plaintiff's vehicle. These purchases of Volkswagen parts enriched Defendant and were appreciated by Volkswagen.

88.     As a result of Defendant's unjust and inequitable conduct alleged herein, including its distribution of defective automobiles into the United States' stream of commerce, as well as its failure to properly remedy those defects, it would be unjust and inequitable for Defendant to be permitted to retain these benefits.

89.     Plaintiff and class members are, therefore, entitled to and hereby pray for a judgment of restitution, ordering Defendant to disgorge its ill-gotten gains to the class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class and subclass members pray for judgment against Defendant as follows:

a)   That the Court determine that this action may be litigated as a class action, and that Plaintiff and her counsel be appointed class representative and class counsel, respectively;

b)   That the Court enter judgment against Defendant and in favor of Plaintiff, the class and the subclasses on all counts;

c)   That Defendant be required by this Court's Order to create a common fund to remedy the defects alleged herein, and to compensate all members of the class and subclasses for their damages and injuries, as well as to compensate Plaintiff's counsel for her

attorneys' fees and cost of suit; and, that Defendant be ordered to bear the cost of notice the absent class members, as well as of the administration of this common fund;

d) That damages and/or restitution or disgorgement be awarded to each Plaintiff and class or subclass member according to proof;

e) That the Court award Plaintiff and the members of the class and subclasses punitive damages assessed against Defendant;

f) That Plaintiff and the class members be awarded all such other relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all counts so triable.

Dated: December 12, 2011

Respectfully submitted,

Roy A. Katriel, Esq.
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, California 92130
Telephone: (858) 350-4342
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiff Shirley J. White*