IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHIRLEY J. WHITE; JENNIFER LACHANCE;
ISABEL HODGSON; and JAMES VINES,
on behalf of themselves and all others similarly situated           PLAINTIFFS

v.                               Case No. 2:11-CV-02243

VOLKSWAGEN GROUP OF AMERICA, INC.                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Volkswagen Group of America, Inc.'s ("Volkswagen") Motion to Dismiss the First Amended Class Action Complaint (Doc. 17) and Brief in Support (Doc. 18); Plaintiffs' Response in Opposition (Doc. 21); and Defendant's Reply (Doc. 23). For the reasons stated herein, Defendant's Motion to Dismiss (Doc. 17) is **GRANTED**.

**I. Background**

Separate Plaintiff Shirley White ("White") of Arkansas filed a class action complaint (Doc. 1) on behalf of herself and all others similarly situated on December 14, 2011. Thereafter, on February 17, 2012, Volkswagen filed its first motion to dismiss for failure to state a claim. White, along with three new Plaintiffs, then filed an Amended Class Action Complaint (Doc. 12) on March 14, 2012.[1] The new Plaintiffs who were added to the Amended Class Action Complaint were Jennifer LaChance ("LaChance") of California, Isabel Hodgson ("Hodgson") of Louisiana, and James Vines ("Vines") of Florida. After the Amended Complaint was filed, Plaintiffs informed the

---

[1] Contrary to Plaintiffs' assertion, the Amended Complaint (Doc. 12) does not appear to have been filed timely, pursuant to Fed. R. Civ. P. 15(a)(1)(B), as it was filed 26 days after service of Defendant's Motion to Dismiss. However, as Defendant did not object to the late filing, the Court has construed Plaintiffs' Amended Complaint as a request for leave to file, which the Court now grants. This Memorandum Opinion and Order will address the merits of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint.

-1-

Court in writing that Vines "was inadvertently included" as a Plaintiff and that his claims should be dismissed. (Doc. 21, p. 1). This left only the claims of White, LaChance, and Hodgson for the Court's consideration.

Plaintiffs' Amended Complaint alleges that New Beetle automobiles manufactured by Defendant from model years 2003 - 2007 contain design and/or manufacturing defects that cause "hard shifting," or difficult and unpredictable shifting into gear during normal driving. Plaintiffs contend that over time, this hard-shifting defect necessitates repair and/or replacement of the subject vehicles' transmission systems, at a cost of several thousand dollars per vehicle.

Plaintiffs further maintain that this transmission defect was present in each of their New Beetles since the date of manufacture. They assert that Defendant was aware of the defect at the time these vehicles were first sold, but failed to disclose the defect to Plaintiffs. Accordingly, Plaintiffs argue that their vehicles' transmission systems were damaged during the relevant warranty periods offered by Defendant.

At the time that Plaintiffs' New Beetles were originally manufactured and sold, there were two warranties offered by Defendant that covered repair or replacement of Plaintiffs' transmission systems. The first warranty was the Limited New Vehicle Warranty, which generally covered the cost of any repairs or defects for four years or 50,000 miles, whichever came first. The second warranty was the Limited Powertrain Warranty, which covered particular defects, including transmission defects, for five years or 60,000 miles, whichever came first. For all Plaintiffs, the coverage period of the Limited Powertrain Warranty overlapped with and exceeded the coverage period of the Limited New Vehicle Warranty.[2]

---

[2] Because the Limited Powertrain Warranty is the most inclusive warranty for all Plaintiffs, the Court will refer only to the Limited Powertrain Warranty (hereinafter "Warranty") when discussing warranty coverage for Plaintiffs' vehicles.

On or about November of 2010, Defendant began mailing letters to owners and lessees of New Beetles from model years 2003 - 2007, stating, "Volkswagen has received customer complaints of affected vehicles that may experience a hard shift from first to second gear, and also from second to third gear." (Doc. 12-2). According to Plaintiffs, Defendant offered to extend the warranty covering the valve body in the transmission system for seven years from the date of manufacture or 100,000 miles, whichever came first, because Defendant recognized and admitted that a transmission defect existed. The extended valve body warranty offered by Defendant did not, however, cover replacement of the entire transmission system in each affected vehicle, but rather was limited to "the diagnosis and repair of the transmission valve body."[3] *Id.*

Plaintiffs allege that defects in their vehicles' transmission valve bodies must have caused damage to their entire transmission systems. All Plaintiffs contend that they were forced to replace their transmission systems at great personal cost. They now bring various causes of action in this matter, on their own behalf and on behalf of a nationwide class of others similarly situated, for breach of express warranty and unjust enrichment. In addition, Plaintiff White of Arkansas asserts, on behalf of herself and a class of Arkansas New Beetle owners and lessees, claims for breach of the implied warranty of merchantability, strict liability for design defect, strict liability for defective manufacture, negligence, and violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq*. Plaintiff LaChance of California asserts, on behalf of herself and a class of California New Beetle owners and lessees, a claim pursuant to the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, and a claim pursuant to California's Unfair

---

[3] This 2010 warranty extension for repair or replacement of the valve body did not cover repair or replacement of the entire transmission system. Thus, the warranty extension did not supersede the Warranty's coverage.

Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.  Lastly, Plaintiff Hodgson of Louisiana asserts, on behalf of herself and a class of Louisiana New Beetle owners and lessees, a claim for redhibition pursuant to Louisiana law.

## II.  Legal Standard

In ruling on a motion to dismiss, the Court accepts as true all of the factual allegations contained in a complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  All reasonable inferences from the complaint must be drawn in favor of the non-moving party.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  Complaints should be liberally construed in the plaintiff's favor and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nevertheless, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.

## III. Discussion

Named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they

belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Accordingly, the Court will begin by analyzing whether the individual claims of Plaintiff White of Arkansas, the first Plaintiff named in the Amended Complaint, are subject to dismissal.

### A. Plaintiff White

White purchased a used 2003 New Beetle in August of 2009. According to the public records of the Arkansas Department of Motor Vehicles, White is the third owner of her vehicle. (Doc. 17-5). At the time White purchased the vehicle, the odometer registered 77,438 miles. The five-year/60,000 mile Warranty covering the transmission system in her vehicle had expired by the time White became the vehicle's owner. She alleges in the Amended Complaint that she began to experience hard-shifting problems when the car had been driven approximately 80,000 miles. White took the vehicle to a factory-authorized Volkswagen dealership for repair and was told that nothing was wrong with her car. The hard-shifting problem persisted. Two weeks later, she returned the car to the dealership and was then told that the transmission system needed to be replaced. White had the transmission system replaced at her own expense on or about July 23, 2010, at a cost of several thousand dollars.

#### 1. Count I: Breach of Express Warranty

It is undisputed that White became the owner of her vehicle in 2009, well after the five-year/60,000 mile Warranty period for her 2003 vehicle expired. The 2003 Warranty states:

> The Limited Powertrain Warranty is automatically transferred without cost if the ownership of the vehicle changes within the Warranty period.

(Doc. 17-2, p. 5).

Because the ownership of White's vehicle was not transferred to White within the Warranty period, White was not covered under the Warranty when she experienced transmission problems. Her breach of warranty claim is therefore subject to dismissal on that basis.

White also fails to plead that she relied upon this clearly expired Warranty in purchasing her used vehicle. According to Arkansas law, this failure to plead that she relied on the Warranty as the basis of her bargain is fatal to her claim. *See Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 447 (1992) ("When a buyer is not influenced by the [terms of an express warranty] in making his or her purchase, the [warranty] is not a basis of the bargain."); *Brooks v. Remington Arms Co., Inc.*, 2010 WL 6971894 (W.D. Ark. Oct. 2010) ("[T]he Arkansas Supreme Court directly addressed this issue and held that reliance is an essential element of an express warranty claim."). Even if White had affirmatively pled reliance, such a pleading would have been implausible, as by the plain terms of the Warranty, White became the owner of her vehicle after the Warranty expired.

Lastly, the Court addresses White's attempt to avoid the application of the Warranty's time and mileage limitations by arguing that they are procedurally and substantively unconscionable. Her argument is that Defendant knew that a latent defect was present in the transmission systems of all 2003 - 2007 New Beetles at the time that these vehicles were advertised and sold to the public. White further contends that "the process surrounding the warranty offering was unfair" due to Defendant's concealment of the transmission defect, and that Defendant "was plainly the party with the superior bargaining power . . . to conceal this knowledge of the defect and thereby craft a warranty that was designed to expire just before the defect was to render the transmission inoperable, thereby relieving Volkswagen from any obligation to remedy the damage of its own making, and

instead leaving Plaintiffs to pay thousands of dollars to replace these defective transmissions." (Doc. 21, p. 23).

White's attempt to extend the coverage of her expired Warranty through an unconscionability argument is unavailing. Her vague claim, unsupported by any factual allegation, that Defendant must have had pre-sale knowledge of the defect and crafted its rather standard five-year/60,000 mile Warranty so as to stymie future claims by purchasers fails to meet the pleading standards set forth in *Twombly*. 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Moreover, "[w]hether a contract is unconscionable must be determined in light of the general commercial background, commercial needs in the trade or particular case, the relative bargaining position of the parties, and other circumstances at the time the contract was made." *Hunter v. Texas Instruments, Inc.*, 798 F.2d 299, 303 (1986). In determining whether a contract is unconscionable, a court must review the totality of the circumstances surrounding the negotiation and execution of the contract to ascertain whether gross inequality of bargaining power existed between the parties. *State ex rel. Bryant v. R&A Inv. Co.*, 336 Ark. 289, 296 (1999).

Here, the Court cannot begin to analyze the unconscionability of the Warranty with respect to White because White was not a party to the original Warranty, nor was she ever covered by the Warranty's transfer provision. White has no standing to argue that she was injured due to the alleged unconscionability of the Warranty, and furthermore, she is not in a position to hypothesize about the circumstances surrounding the negotiation and execution of the original contract. She cannot speak to the relative bargaining positions of the former owners of her vehicle, who, in fact, were in privity of contract with Defendant. White's bargaining power in relation to Defendant's is therefore

immaterial, as White purchased her six-year-old vehicle knowing that the Warranty had already expired.

Taking White's unconscionability argument to its logical conclusion, it appears that she would be in favor of allowing any New Beetle owner to make a transmission claim on the Warranty at any time, regardless of the number of years of use or number of miles registered on the vehicle's odometer. Defendant, however, is not required to warrant its vehicles forever. As the Second Circuit observed in the often-cited case of *Abraham v. Volkswagen of Am., Inc.*:

> All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.

795 F.2d 238, 250 (2d Cir. 1985).

Indeed, there is nothing facially unconscionable about a five-year/60,000 mile warranty in the auto industry. Even warranties with more restrictive terms have been approved by many courts. *See, e.g., Nelson v. Nissan North Am., Inc.*, 2012 WL 3920626, *5 (D. N.J. Sept. 7, 2012) ("First, there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty."); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 1574301 (D. N.J. May 3, 2012) (three-year/36,000 mile warranty not unconscionable); *Alban v. BMW of N. Am., LLC*, 2011 WL 900114 (D. N.J. March 15, 2011) (four-year/50,000 mile warranty not unconscionable); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965 (D. N.J. Oct. 31, 2011) (same); *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011) (three-year/36,000 mile warranty not unconscionable); *In*

*re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal 2010) (same); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942 (Ill. App. Ct. 2005) (same); *Moore v. Coachmen Indust., Inc.*, 499 S.E.2d 772 (N.C. Ct. App. 1998) (twelve-month/15,000 mile warranty not unconscionable); *Hornberger v. General Motors Corp.*, 929 F. Supp. 884 (E.D. Pa. 1996) (three-year/36,000 mile warranty not unconscionable).

As the Warranty in the case at bar meets industry standards and, in the Court's view, was not unconscionable, it is clear that White was not covered under the Warranty. Her express warranty claim must therefore be dismissed.

### 2. Count II: Breach of Implied Warranty of Merchantability

Arkansas law permits a merchant to limit an implied warranty of merchantability. Ark. Code Ann. §§ 4-2-314 and 4-2-316. Here, according to the plain terms of Defendant's express Warranty, the implied warranty of merchantability applicable to White's vehicle "is limited in duration to the period of this written warranty." (Doc. 17-2, p. 5). As discussed above, the written Warranty expired prior to the time White became the owner of her vehicle. Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired.

Even if the express language of the Warranty had not limited the term of the implied warranty on White's vehicle, Arkansas law imposes a four-year statute of limitations on all implied warranties, beginning on the date of tender of delivery. Ark. Code Ann. § 4-2-725. The parties agree that the tender of delivery of White's car was made in 2003 to the car's original owner. Under any interpretation of law, therefore, no implied warranty of merchantability existed in 2009, when White became the car's new owner. The implied warranty of merchantability claim must be dismissed.

### 3. Counts III - IV: Strict Liability for Design Defect and Defective Manufacture

In Arkansas, a supplier of a product is liable under a strict liability theory if (1) the product was supplied in a defective condition which rendered it unreasonably dangerous, and (2) the defective condition was the proximate cause of harm to person or property. Ark. Code Ann. 4-86-102. Arkansas law accordingly requires a plaintiff to "prove that the product in question was in a defective condition at the time it left the hands of the particular seller." *Campbell Soup Co. v. Gates*, 319 Ark. 54, 59 (1994). Here, White alleges that her vehicle had a latent defect that caused the transmission system to fail and require replacement prematurely.

The Arkansas Supreme Court has held that in order to demonstrate liability on the basis of circumstantial evidence, the plaintiff "must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Id.* "A plaintiff is no longer required to prove negligence in a strict liability claim but still must prove the product was defective so as to render it unreasonably dangerous, and that the defect was the cause of the injury." *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 391 (1985).

The Amended Complaint states generally that "[d]uring the time that each of the Plaintiffs possessed their respective vehicles, they adhered to the required vehicle maintenance work and schedule." (Doc. 12, para 10). However, the Amended Complaint does not include any information about the actions taken by prior owners of Plaintiffs' vehicles with respect to maintenance.[4] White, for example, is her vehicle's third owner, and it appears she can only speculate as to how her vehicle

---

[4] The only mention in the Amended Complaint regarding the prior ownership of Plaintiffs' vehicles is the following: "None of Plaintiffs' vehicles were involved in an accident during the times of Plaintiffs' ownership *or, insofar as Plaintiffs have been able to determine, at any time prior to that*." (Doc. 12, p. 6) (emphasis added).

was driven, maintained, repaired, or modified during the six years prior to the time she bought the vehicle. She states no facts in the Amended Complaint which would lead the Court to conclude that she can "prove that the product in question was in a defective condition at the time it left the hands of the particular seller." *Campbell*, 319 Ark. 59.

White does not attempt to trace the chain of custody and ownership of her vehicle back to Defendant, which is significant because the fact that the transmission in her car failed after seven years and nearly 80,000 miles, following ownership by two previous drivers, suggests any number of plausible causes for the failure. Because White has failed to establish proximate causation, her strict liability claims must be dismissed.

### 4. Count V: Negligence

To establish a claim for negligence under Arkansas law, a plaintiff must demonstrate that a duty of care was owed, the defendant breached that duty of care, and the breach was the proximate cause of the plaintiff's injuries. *Branscumb v. Freeman*, 360 Ark. 171, 179 (2004). As explained above with regard to White's strict liability claims, as the third-hand owner of her used vehicle, White is unable to show proximate causation of her injury, as she alleges no facts in the Amended Complaint regarding the use, maintenance, or repair of her vehicle during the six years prior to her purchase. She makes no statement as to other possible causes for the damage to her vehicle prior to the time she became the vehicle's owner, which was after the Warranty had expired. Accordingly, without a valid showing of proximate causation, White's negligence claim must also be dismissed.

### 5. Count VI: Violations of Arkansas Deceptive Trade Practices Act

When a person "suffers actual damage or injury as a result of an offense or violation" of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-113(f), a cause of

action for liability may be brought for any "unconscionable, false, or deceptive act or practice in business, commerce, or trade," Ark. Code Ann § 4-88-107(a)(10).  White contends that Defendant violated the ADTPA when it knowingly advertised and sold White a vehicle that contained a latent transmission defect that would require repair and/or replacement prior to the expiration of the Warranty.  White claims she reasonably relied upon certain representations, omissions, and advertisements presented by Defendant in connection with the qualities, standards, characteristics, and/or attributes of Defendant's New Beetle automobile, and White now finds herself damaged due to out-of-pocket repairs she was forced to make to her vehicle's transmission system.  (Doc. 12, p. 27).

In particular, White contends that Defendant "made false representations as to the characteristics and benefits of the subject vehicles," "advertised the subject vehicles, touting the warranties purportedly covering the subject vehicles, all the while with the intent not to sell them as advertised," and "engaged in representations and omissions in connection with the advertising, marketing, and offering for sale of the subject vehicles . . . that are deceptive and unconscionable at common law" in violation of Ark. Code Ann. § 4-88-107(a)(1), (a)(3), and (a)(10).  *Id.*

Federal Rule of Civil Procedure 9(b) requires any plaintiff claiming fraud to plead with particularity the circumstances constituting fraud.  The Court observes, and the parties apparently agree, that Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims.  *In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F.Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd*, *Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *Pruitt v. Southwestern Energy Co.*, 2013 WL 588998, at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v. Reconstrust Co. NA*, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010).  This pleading standard

"demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading." *Id.* The reason why particularity in pleading is required for fraud claims, such as those established under the ADTPA, is "to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Id.*

Beginning with White's false representations and false advertising claims, the Court observes that at no point in the Amended Complaint does White specify what false representations were affirmatively made to her by Defendant, nor does she state that she relied on particular false representations *in making the decision to purchase her vehicle*. These facts are fatal to White's ADTPA claims.

White summarily maintains that Defendant should be held liable under the ADTPA for "any advertising that depicts the subject vehicles in a manner that leads the consumer to believe that they are of superior quality, design, or reliability," presumably because White's own vehicle required repair after more than six years of use, three different owners, and approximately 80,000 miles of driving. (Doc. 12, p. 28). White further contends, again, without reference to any particular advertising, statement, or campaign conducted by Defendant, that Defendant set out "to assure the public falsely that there was no cause for concern about the quality of manufacturing and assembly of the Volkswagen New Beetle, even when Volkswagen of America knew that this was not true because it was receiving numerous complaints about defects in the components of the same vehicles, including their transmissions." *Id.* White cites to a news article entitled "Defining the American Car," from July 26, 2003, in which Defendant purportedly responds to "public concern over the

quality of the New Beetle's assembly" by reassuring consumers that assembly in Mexico yields vehicles that are "comparable" to the vehicles built by Defendant in Germany. *Id.* at pp. 14-15.[5]

Taking White's claims in turn, the Court finds that her complaints about Defendant's general advertising of the New Beetles' superior quality, design, and reliability do not meet Rule 9(b)'s requirements for pleading fraud with particularity. White appears to object to all positive advertising and branding of the New Beetle by Defendant. Such objections are too generic to provide enough information to allow Defendant to respond specifically and quickly to her allegations of fraud, and they do not meet the pleading standards of *Iqbal* and *Twombly*. Furthermore, Defendant's alleged "campaign" to diffuse criticism about its decision to manufacture vehicles in Mexico, if anything, must be construed as evidence of Defendant's openness as to its manufacturing procedures, rather than its concealment of such. According to the date of the article attached to the Amended Complaint, Defendant confirmed to the public that it was building its New Beetles in Mexico more than six years before White decided to purchase her vehicle. White may only claim a violation of the ADTPA if she suffered economic injury "as a result" of her reliance on Defendant's allegedly false representations or advertisements. Ark. Code Ann. § 4-88-113(f). Clearly, none of the representations and advertisements she cites in the Amended Complaint may be construed as the cause or causes of White's particular injury.

Finally, although White claims that Defendant made advertisements touting the New Beetle's various warranties, White cannot plausibly claim that she relied on such advertisements in making

---

[5] In the Court's view, this article cited by Plaintiffs (Doc. 12-3) would tend to caution, rather than encourage, the average consumer as to the quality of the 2003 New Beetle. The article, which was published the same year White's car was manufactured, essentially criticizes Defendant's decision to assemble some of its vehicles in Mexico, rather than Germany, and implies that assembly in Mexico is undesirable. Far from concealing this fact, Defendant appears to have admitted it in the text of the attached article.

her purchasing decision.  This is because, as discussed above, it is unreasonable for White to have relied on Defendant's clearly expired Warranty in making her purchasing decision, and thus, any advertisement touting the Warranty could not have led to White's injury.

The only ADTPA claim remaining is White's fraudulent omissions/fraudulent concealment claim.  Ark. Code Ann. § 4-88-107(10).  The gist of this claim is that Defendant fraudulently concealed from White and other consumers the latent defect in the New Beetles' transmission systems.  Defendant correctly points out that the ADTPA has a statute of limitations period of five years, which would appear to preclude White from making her ADTPA claim seven years after the original date of manufacture of her vehicle.  Ark. Code Ann § 4-88-115.  However, White counters in her Response to Defendant's Motion to Dismiss that Defendant's fraudulent concealment of the transmission defect tolled the limitations period:

> Here, the whole premise of the ADTPA claim is that Volkswagen engaged in a furtive campaign to fraudulently conceal the latent defect plaguing the Tiptronic transmissions.  Under these circumstances, where White did not and could not have earlier discovered Volkswagen's fraudulent omission, the statute of limitations did not begin to run when her vehicle was first sold, but rather only upon White's discovery of the violation . . .

(Doc. 21, p. 48).

White asserts that Defendants had knowledge of a transmission defect at the time of manufacture and actively concealed this fact, and that White relied on Defendant's omission/concealment of the defect when making the decision to purchase her car.  White provides no details as to which individuals employed by Defendant concealed knowledge of the alleged defect, when such concealment occurred, or how Defendant's "campaign to fraudulently conceal" was carried out.  *Id.*  As evidence of Defendant's knowledge of the defect, White can only point to

Defendant's 2010 offer to extend the warranty on the valve body, which does not demonstrate Defendant's knowledge of the defect in 2003, the date White's vehicle was manufactured.

It is black letter law that "when a failure to speak is the equivalent of fraudulent concealment, the law imposes a duty to speak rather than remain silent." *Badger Capital, LLC v. Chambers Bank of North Arkansas*, 650 F.3d 1125, 1130 (8th Cir. 2011) (internal quotations and citations omitted). One owes the duty to disclose information only when there is an established relationship between the parties, such as a contractual relationship or a fiduciary relationship. *Id.* (citing *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 387 (1983)). "Arkansas courts appear to require the existence of some type of relationship or contact between the parties before they conclude that special circumstances exist." *Id.* at 1131. Accordingly, even if White had made an adequate showing that Defendant knew or should have known of a latent defect in the transmission system, it is clear that there was no privity of contract at any time between Defendant and White, and no confidential or fiduciary relationship exists or existed between them. Without any basis for imposing on Defendant a duty to disclose any alleged defect to White, no fraudulent omissions or fraudulent concealment occurred. All of White's ADTPA claims must therefore be dismissed for the reasons discussed above.

### 6. Count XI: Unjust Enrichment

"[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *El Paso Production Co. v. Blanchard*, 371 Ark. 634, 646 (2007). "To find unjust enrichment, a party must have received something of value . . ." *Hatchell v. Wren*, 363 Ark. 107, 117 (2005). White alleges that "[b]y purchasing a Volkswagen-branded automobile, Plaintiffs and

the class members conveyed monetary as well as intangible benefits on Defendant, and Defendant appreciated and was enriched by those benefits." (Doc. 12, p. 36). However, White admits that she is the third-hand purchaser of her used New Beetle, and therefore, Defendant received no monetary benefit from White's purchase.

White also maintains that she was "forced to and did purchase replacement Volkswagen transmission parts that were necessary as a result of the defect plaguing Plaintiff's vehicle," and that the purchase of Volkswagen-brand replacement parts unjustly enriched Defendant. *Id.* This allegation assumes that Defendant had some obligation to repair White's transmission. However, as discussed above, the Warranty covering the transmission had expired long before White's transmission failed, and Defendant had no contractual obligation to repair or replace the transmission when it was out of warranty. Since Defendant did not owe White a new transmission, it follows that White's out-of-pocket purchase of a new transmission conferred no unjust benefit on Defendant. White's unjust enrichment claim, therefore, must be dismissed.

### B. Venue

Now that the Court has determined that all of Arkansas Plaintiff White's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), the question of the Court's continuing jurisdiction over the claims of the remaining Plaintiffs must be considered. The basis for the Court's jurisdiction in this matter is diversity of citizenship pursuant to 28 U.S.C. § 1332, as Plaintiffs are citizens of Arkansas, California, and Louisiana, and Defendant is a citizen of Delaware, Virginia, and possibly Michigan. White is without standing to pursue claims on behalf of any putative class members. *Warth*, 422 U.S. at 502. Dismissing her from this action means that the Court is left with only the common law and state law claims of the two out-of-state Plaintiffs, LaChance and Hodgson.

According to 28 U.S.C. § 1407(b), a civil action may be brought in (1) a judicial district in which any defendant resides, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim or claims occurred, or, if there is no district in which an action may otherwise be brought, (3) any judicial district in which any defendant is subject to a court's personal jurisdiction. In this case, Defendant resides outside of Arkansas. None of the claims made by the remaining Plaintiffs were occasioned by events that occurred in Arkansas. Therefore, it is clear that the Western District of Arkansas is not the proper venue for the claims remaining in this case. This action may otherwise be brought in California or Louisiana, where the remaining Plaintiffs reside, and indeed, the courts in those states would be better equipped to adjudicate matters arising under their respective states' laws.

### IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED THAT:

Plaintiff Vines' claims are voluntarily dismissed; Plaintiff White's claims are dismissed with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and the remaining claims of Plaintiffs LaChance and Hodgson are dismissed without prejudice, due to lack of proper venue, pursuant to 28 U.S.C. § 1406(a).

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss (Doc. 17) is GRANTED, and this case is dismissed. Judgment will enter contemporaneously herewith.

All other pending motions are DENIED AS MOOT.

IT IS SO ORDERED this 25th day of February, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE